NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| ———————————————— | : |  |
| STEPHEN BULBOFF, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : | Civil No. 19-18236 (RBK) |
| v. | : |  |
|  | : | **OPINION** |
| KING AIRCRAFT TITLE, INC., | : |  |
|  | : |  |
| Defendant. | : |  |
| ———————————————— | : |  |

**KUGLER**, United States District Judge:

Presently before the Court is Plaintiff Stephen Bulboff's Motion for Summary Judgment (Doc. No. 22) and Defendant King Aircraft Title's Cross Motion for Summary Judgment (Doc. No. 24). For the reasons expressed below, Plaintiff's Motion is **GRANTED** in part and Defendant's Motion is **GRANTED** in part.

## I.      BACKGROUND

This case involves a title and lien search company's failure to inform a purchaser of an aircraft that it was encumbered by a lien held by the United States. Over a year later, the United States confiscated the aircraft and the purchaser brought suit against the title search company.

### A.  Local Civil Rule 56.1 Violations

Before setting forth the pertinent facts, we must address the parties' violations of Local Civil Rule 56.1. Defendant failed to comply with Local Civil Rule 56.1 by not denying or admitting some of Plaintiff's assertions. In paragraphs 1, 2, 9, 11, and 13 of Defendant's response to Plaintiff's statement of material facts, Defendant states it "is still in the process of

developing discovery" or "is not in possession of facts that either substantiate or dispute Plaintiff's assertion[s]." This is insufficient. Defendant may not defeat summary judgment by stating only that Plaintiff will at some later uncertain time be held to his proofs; the time to rebut the proofs is now. And while we are mindful that discovery is still ongoing, as will be set forth below, Defendant has utterly failed to satisfy the requirements of Rule 56(d). Therefore, Defendant's failure entitles the Court to deem undisputed each statement that Defendant neither admitted nor denied in its responsive statement. *Schwartz v. Hilton Hotels Corp.*, 639 F. Supp. 2d 467, 469 (D.N.J. 2009) (deeming admitted each statement that was not admitted nor denied in the plaintiff's responsive statement).

Plaintiff also failed to comply with Local Civil Rule 56.1. In his response to Defendant's counter statement of material facts, Plaintiff denies each and every assertion but fails to cite to the record. Rule 56.1 is very clear. Plaintiff, as the party opposing Defendant's cross motion for summary judgment, must set forth its response to Defendant's statement of material facts and if any fact is disputed, support the assertion with citations to the record. Plaintiff fails to support its disputes with any citation to the record. This failure also entitles the Court to deem undisputed each statement of fact that Plaintiff disputed without citing to the record—nearly all of Defendant's statements of material facts. *McDougald v. Twp. of Franklin*, No. CV157095MASTJB, 2017 WL 6065177, at *2 (D.N.J. Dec. 7, 2017) (noting that "any statement, or portion thereof, that is not clearly denied—in *substance*, not merely with the label 'disputed'—and with a proper citation to the record in a responsive Rule 56.1 statement is deemed admitted."); *Laymon, Jr. v. Bombardier Transp. (Holdings) USA, Inc.*, No. CIV.A 05-169, 2009 WL 793627, at *1 (W.D. Pa. Mar. 23, 2009) (deeming admitted the facts as stated in

the plaintiff's counterstatement of material facts because of defendant's failure to comply with Rule 56.1).

Therefore, because both parties have hamstrung themselves by violating this rule, which is not merely a cosmetic concern, the Court will parse through the record to determine the material facts underlying this dispute. *Ward v. Ingersoll-Rand Co.*, No. CV15327MASLHG, 2016 WL 2996769, at *1 n.1 (D.N.J. May 24, 2016), aff'd, 688 F. App'x 104 (3d Cir. 2017) (parsing through the record and statement of material facts to identify genuine disputes of material fact because the party violated Rule 56.1 by making blanket denials).

### B.  Factual Background[1]

On January 26, 2016, the Royal Air Museum acquired a Learjet from General Services Administration acting through the State Agency of Surplus Property of Florida. (Doc. No. 24-3, Def's Supp. SMF at ¶ 1) (Doc. No. 24-6, Certification of Mark Daniels at ¶ 6). The transfer of the Learjet to the Royal Air Museum was subject to certain restrictions, including a prohibition on the subsequent transfer of the Learjet for a certain period of time. (Doc. No. 24-6, Certification of Mark Daniels at ¶ 6). The restrictions imposed on the Learjet were set forth in a document entitled "Non-Combat Type Aircraft Conditional Transfer Document." (*Id.* at ¶ 6).[2] Around the time the Royal Air Museum acquired the Learjet, Plaintiff Stephen Bulboff was an

---

[1] Because neither party indicates how their hearsay evidence will be admissible, we will assume that they intend to have the declarants testify directly. *Williams v. Borough of West Chester*, 891 F.2d 458, 466 n.12 (3d Cir.1989) (citation omitted) (noting "hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e., 'in a form that would be admissible at trial.'"). Even assuming that to be the case, it still does not resolve many of the hearsay statements the parties rely on to rebut each other's proofs. For instance, Plaintiff offers no suggestion as to how he intends to introduce the hearsay statement that he was "informed by the federal agents involved that the document purporting to release the lien on the Aircraft was fraudulent." Likewise, Defendant fails to indicate how he intends to introduce the email from Special Agent Todd A. Damiani—a statement that is quintessential hearsay. This Court is simply left to guess as to the parties' intentions.
[2] Plaintiff denies this fact but at the same time attaches the title search report from King Aircraft which identifies the "lien" as a Non-Combat Type Aircraft Conditional Transfer Document.

advisory board member for the Museum and negotiated with it for the purchase of a Learjet. (Doc. No. 22-3, Pl's SMF at ¶ 1); (Doc. No. 24-3, Def's Supp. SMF at ¶ 4). He offered the Royal Air Museum funding in exchange for the right to purchase the Learjet after any restrictions were released. (Doc. No. 24-3, Def's Supp. SMF at ¶¶ 4–5); (Doc. No. 24-6, Certification of Mark Daniels at ¶ 9). The Offer of Purchase, which confirmed Mr. Bulboff's right to purchase the Learjet, was executed and signed by him on April 15. (Doc. No. 24-3, Def's Supp. SMF at ¶¶ 6–7). It stated in pertinent part that Mr. Bulboff "[s]hall be able to use the aircraft at his own expense" until the museum property provisions and restrictions were satisfied. (*Id.* at ¶ 6); (Doc. No. 24-6, Certification of Mark Daniels at ¶ 11).

After making a down payment of $62,500 for purchase of the Learjet, Mr. Bulboff contacted Defendant King Aircraft Title, Inc., an Oklahoma corporation that performs title searches, to perform a lien search on the Learjet, its engine, and other component parts to determine if they were encumbered. (Doc. No. 22-3, Pl's SMF at ¶ 2). King Aircraft agreed to undertake the assignment, and throughout their dealings, communicated with Mr. Bulboff via email or telephone. (*Id.* at ¶ 4).

On April 19, 2016, in response to Plaintiff's request for title searches, King Aircraft emailed Mr. Bulboff six title search reports regarding the Learjet and its parts. (*Id.* at ¶ 5). All six reports indicated that there no liens or encumbrances. (*Id.* at ¶ 6). Mr. Bulboff compensated King Aircraft for each title search it performed on the Learjet. (*Id.* at ¶ 16). Sometime thereafter, Mr. Bulboff continued with the purchase of the Learjet for approximately $200,000.00.[3] (*Id.* at ¶ 8). Before he could take possession of the aircraft, Mr. Bulboff repaired or replaced certain avionics and spent approximately $75,000.00 to make it flight ready. (*Id.* at ¶ 9–10). After he finished

---

[3] Defendant seems to dispute the reliance aspect of Plaintiff's assertion in paragraph 8, not so much the monetary amount spent by Plaintiff.

repairing the Learjet, Mr. Bulboff finalized the purchase and paid the balance of the purchase price in February of 2017. (*Id.* at ¶ 11).

In April of 2017, King Aircraft emailed Mr. Bulboff a title report, dated April 18, 2016, which indicated that the Learjet was subject to a lien, entitled "Non-Combat-Type Aircraft Conditional Transfer Document," held by the United States General Services Administration. (*Id.* at ¶ 12–13). This title report was not included in the original email sent to Mr. Bulboff in April of 2016, and King Aircraft has admitted it omitted the title report by mistake. (*Id.* at ¶¶ 13, 21). In mid-2018, the United States confiscated the Learjet and Mr. Bulboff no longer has possession of it. (Doc. No. 26-3, Pl's Response to Def's SMF at ¶ 11); (Doc. No. 26-1, Exhibit A at ¶ 12).

On August 20, 2020, King Aircraft performed a title search on the Learjet and discovered not only that the lien held by the United States was purportedly released on June 20, 2017, but also that there was no claim to ownership beyond the Royal Air Museum's. (Doc. No. 24-3, Def's Supp. SMF at ¶ 11); (Doc. No. 24-7, Certification of Debbie King at ¶ 3).

### C. Procedural History

Plaintiff filed a complaint against Defendant on September 23, 2019, asserting claims for breach of contract and negligent and fraudulent misrepresentation. (Doc. No. 1). The complaint was subsequently amended, and Defendant answered on December 2, 2019. (Doc. No. 5, 7). Plaintiff then moved for partial summary judgment on the breach of contract and negligent misrepresentation claims. (Doc. No. 17). This motion was denied without prejudice for failure to comply with Local Civil Rule 56.1. (Doc. No. 21). Plaintiff then filed a renewed motion for partial summary judgment and Defendant cross moved for summary judgment as well. (Doc. No. 22, 24).

## II.    LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law*." Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of a "genuine issue of material fact." *Aman v. Cort Furniture Rental Corp*., 85 F.3d 1074, 1080 (3d Cir. 1996). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co*., 311 F.3d 226, 233 (3d Cir. 2002). The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386,

393 (3d Cir. 1998), and credibility determinations are for the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

The filing of cross–motions for summary judgment does not change this analysis. See *Transportes Ferreos de Venezuela II CA v. NKK Corp*., 239 F.3d 555, 560 (3d Cir.2001); *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir.1987). The filing of such claim by the parties "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Transportes Ferreos de Venezuela II CA*, 239 F.3d at 560 (citation omitted). If review of cross–motions for summary judgment reveals no genuine issue of material fact, then judgment will be entered in favor of the party deserving of judgment in light of the law and undisputed facts. *See id*.; *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir.1998) (citation omitted); Fed.R.Civ.P. 56(c).

## III.   DISCUSSION

Plaintiff moves for summary judgment on Counts I and II of the Complaint, the breach of contract and negligent misrepresentation claims. Defendant cross moves for summary judgment on the breach of contract, negligent misrepresentation, and fraudulent misrepresentation claims as well. Defendant also requests, in the alternative, that we abstain from ruling on summary judgment until completion of discovery. Each issue will be addressed in turn.

### A.  Abstaining from Ruling on Summary Until Completion of Discovery

Defendant requests that we defer considering Plaintiff's motion for partial summary judgment until after completion of discovery pursuant to Rule 56(d). Plaintiff vigorously opposes this request and contends the discovery sought by Defendant would not preclude granting summary judgment for Plaintiff.

Fed.R.Civ.P. 56(d) provides that a non-movant may show by affidavit or declaration that "for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment. Upon that affidavit or declaration, we may (1) defer considering the motion or deny it, (2) allow time for the parties to obtain affidavits or declarations or take discovery, or (3) issue any other appropriate order. Fed.R.Civ.P. 56(d) (1)-(3).

Our Court of Appeals has recently clarified that under Rule 56(d) a party may request an opportunity for discovery by attaching an appropriate affidavit or declaration to its response to the opposing party's motion for summary judgment and by asserting that the motion should not be granted without affording the non-movant an opportunity for discovery. *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir.2015). The Court also observed that district courts usually grant such requests as a matter of course, particularly when the moving party has control over the relevant facts. *Id.* (citing *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 309–10 (3d Cir.2011)). An affidavit requesting such discovery is adequate if it specifies "what particular information ... is sought; how, if disclosed, it would preclude summary judgment; and why it has not been previously obtained." *Id.* (citing *Dowling v. City of Phila.*, 855 F.2d 136, 140 (3d Cir.1988)). Vague or general statements of what a party hopes to gain through a delay for discovery are insufficient. *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 230 (3d Cir.1987).

Defendant's request for this Court to defer consideration of Plaintiff's motion for partial summary judgment is denied because Defendant does not specify what particular information is sought or how, if disclosed, it would preclude summary judgment. Defendant makes vague assertions like "much of the additional information and documents that are critical and relevant to this matter" are in the possession of third parties, "the bulk of information relevant to this matter is not in the possession or control of Defendant," or "the Jahnsen Certification explains . .

. the difficulties that Defendant has encountered . . . [in] gathering . . . critical information that defeats Plaintiff's claims." The Jahnsen Certification is even worse. It merely states "[t]he gathering of pertinent information regarding Plaintiff's claims has been hampered . . . by Plaintiff's lack of forthrightness." Nowhere does Defendant explain what particular information it seeks in discovery or how this information will preclude summary judgment. Therefore, Defendant's request is denied. *Malouf v. Turner*, 814 F. Supp. 2d 454, 460 (D.N.J. 2011) (refusing to delay ruling on or deny summary judgment because the plaintiff articulated no specific facts that he believes further discovery will reveal and therefore failed to comply with Rule 56(d)).

### B. Breach of Contract

Under New Jersey law, a plaintiff has the burden to prove four elements for a breach of contract cause of action: (1) the parties entered into a contract containing certain terms; (2) the plaintiff did what the contract required him to do; (3) the defendant did not do what the contract required him to do; and (4) defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff. *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482, 139 A.3d 57, 64 (2016).

Plaintiff and Defendant do not dispute that they entered into an agreement whereby Defendant agreed to perform title searches on the Learjet and its constituent parts to determine if they were encumbered in exchange for compensation. They also do not dispute that Plaintiff compensated Defendant for the work performed. Lastly, there is no dispute that Defendant mistakenly failed to provide Plaintiff with a title report indicating that there was a lien on the Learjet until a year after Defendant provided the original title reports. Thus, three of the four elements for the breach of contract claim are satisfied—the parties entered into a contract

containing terms, Plaintiff fulfilled his end of the bargain and Defendant did not. Only the last element is of concern here.

Based on the foregoing concessions, Plaintiff argues it is entitled to summary judgment as to liability for the breach of contract claim. Defendant contends summary judgment should be denied because there is a genuine dispute of material fact whether Defendant's breach caused a loss to Plaintiff. According to Defendant, because the facts show that Plaintiff was aware of the lien before purchasing the aircraft, Plaintiff's assertion that he would not have purchased the Learjet or made repairs had he known of the lien is patently false. Likewise, because the lien was ultimately released, there is no evidence that Defendant's breach caused a loss to Plaintiff.

In response, Plaintiff argues the evidence does not show he was aware of the lien prior to purchase of the Learjet because the Offer to Purchase references the Learjet being subject to "museum property provisions," which does not reflect existence of the United States' lien. Plaintiff also contends the certification of Defendant's counsel should be disregarded because it is not based on personal knowledge and constitutes inadmissible hearsay. Lastly, Plaintiff disputes the assertions in Mark Daniel's certification; Plaintiff contends he did not sign nor draft the Offer of Purchase and that he was never an advisory board member of the Royal Air Museum.

We agree with Plaintiff that he is entitled to summary judgment as to liability for his breach of contract claim because Defendant's causation argument is clearly unsupported by the law.[4] "[L]iability for breach of contract does not require proof of damage beyond the breach itself." *City of Trenton v. Cannon Cochran Mgmt. Servs., Inc*., No. A-5576-09T1, 2011 WL

---

[4] Perhaps Defendant is not arguing liability but damages. The Court cannot tell because Defendant's brief is unclear. Therefore, we are construing it as only contesting liability. As such, we need not reach the issue of damages for the breach of contract claim at this time.

3241579, at \*4 (N.J. Super. Ct. App. Div. Aug. 1, 2011). Where breach of contract is at issue, the nexus between the breach and the harm alleged by the aggrieved party is relevant to damages, not liability. *See Totaro, Duffy, Cannova and Company, L.L.C. v. Lane, Middleton & Company*, L.L.C., 191 N.J. 1, 12 (2007) (noting that a focus on principles of proximate cause was irrelevant in a contract case and confounded the analysis of damages). Therefore, Defendant's nexus argument is simply incorrect as a matter of law. Accordingly, Plaintiff is entitled to partial summary judgment on liability and therefore Defendant's cross motion for summary judgment is denied. *City of Trenton v. Cannon Cochran Mgmt. Servs., Inc.*, No. A-5576-09T1, 2011 WL 3241579, at \*4 (N.J. Super. Ct. App. Div. Aug. 1, 2011).

### C.  Negligent Misrepresentation Claim

A cause of action for negligent misrepresentation requires proof that: (1) defendant negligently provided false information; (2) plaintiff was a reasonably foreseeable recipient of that information; (3) plaintiff justifiably relied on the information; and (4) the false statements were a proximate cause of plaintiff's damages. *Hussain v. Citizens Fin. Grp., Inc.*, No. A-0865-17T1, 2019 WL 490091, at \*4 (N.J. Super. Ct. App. Div. Feb. 8, 2019), cert. denied, 238 N.J. 423, 211 A.3d 718 (2019).

Plaintiff argues summary judgment should be granted in its favor on its negligent misrepresentation claim because: (1) on April 19, 2016, Defendant provided Plaintiff with six title search reports which indicated the Learjet was free and clear of all liens or encumbrances; (2) this was false because there was a lien imposed on the Learjet by the United States; (3) Defendant had this information in its possession in April of 2016 and admits it failed to inform Plaintiff until 2017 due to a "mistake"; (4) in reliance on the original incorrect information provided by Defendant, Plaintiff purchased the Learjet; and (5) these false statements caused

Plaintiff to suffer damages because he would not have purchased the now confiscated Learjet had he known of the lien.

Defendant argues Plaintiff cannot prove the third and fourth elements of his negligent misrepresentation claim—that he justifiably relied on Defendant's inaccurate title reports and they were the proximate cause of his damages—because he was aware of the lien prior to purchase of the Learjet, the lien was released, and the Learjet was seized as evidence for grand jury proceedings, not as a result of the lien. Because we find there is no genuine dispute of material fact that Defendant's false statements were not the proximate cause of Plaintiff's damages, we need not reach the other issues.

"[T]o be a proximate cause, . . . conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial factor in producing the particular injury." *Davis v. Brooks*, 280 N.J. Super. 406, 411 (App. Div. 1993). This causal connection may be broken by a superseding intervening cause. "Such a cause must be one that so entirely supersedes the operation of the first tortfeasor's negligence that it alone caused the injury, without the first tortfeasor's negligence contributing thereto in any material way." *Id.* at 412.

Defendant submitted evidence that the lien held by the United States was released on June 20, 2017. Plaintiff disputes the legitimacy of this release and contends it is fraudulent. However, Plaintiff makes a major misstep when he attempts to repudiate this evidence; he relies on inadmissible hearsay and fails to demonstrate how his statement that he was "informed by the federal agents involved that the document purporting to release the lien on the Aircraft was fraudulent" is capable of admission at trial. This statement relies on quintessential hearsay—a third party's out of court statement that is being offered to prove the lien release was in fact

fraudulent. While it is well settled that hearsay statements can be used to raise a genuine dispute of material fact when such statements are capable of admission at trial, inadmissible hearsay declarations will not defeat motions for summary judgment. *See Davis v. Norwood*, No. 3:14-CV-147, 2014 WL 11456081, at *3 (M.D. Pa. Nov. 7, 2014), report and recommendation adopted, No. 3:14-CV-00147, 2014 WL 11456594 (M.D. Pa. Dec. 1, 2014), aff'd, 614 F. App'x 602 (3d Cir. 2015) (citing cases). Therefore, because Plaintiff's attempt to rebuff the release of the lien is based on inadmissible hearsay, only one conclusion can be drawn from the admissible evidence: the Learjet was confiscated for a reason other than the lien. This means that despite Defendant's original negligent misrepresentation, this later intervening event alone caused Plaintiff's injuries and therefore broke the causal chain. Accordingly, Defendant is entitled to summary judgment on the negligent misrepresentation claim and Plaintiff's motion for summary judgment on this claim is denied.

Plaintiff's argument to the contrary, that he would not have entered into the transaction if he had known of the lien, misses the point. [5] *McCabe v. Ernst & Young, LLP*, No. CIV. 01-5747 (WHW), 2006 WL 42371, at *14 (D.N.J. Jan. 6, 2006), aff'd sub nom. *McCabe v. Ernst & Young, LLP.*, 494 F.3d 418 (3d Cir. 2007) (explaining that a plaintiff's assertion that the misrepresentations were a substantial factor in inducing him to enter into an agreement is unpersuasive because later intervening events could break the chain of causation). When tracing causation we focus on all of the events leading up to the injury. But under Plaintiff's logic, we would focus only on those events leading up to the transaction, to the exclusion of everything

---

[5] Plaintiff makes this argument several times, but we do not understand it. The damages Plaintiff suffered arises from the fact that he no longer has possession of the Learjet and the invaluable services rendered by Defendant. If he still had possession of the Learjet and the lien was released, it would be irrelevant that he would not have entered into the transaction but for Defendant's omission because Plaintiff would have suffered no injury. Plaintiff cannot just characterize his injury as an economic loss and expect to recover when he receives the benefit of his bargain. *See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 281 (3d Cir. 2018).

after. This treats the injury as the purchase of the Learjet, which no one would argue is correct. Rather, Plaintiff's injury is the confiscation of the Learjet. Therefore, what happened after the transaction, including the release of the lien, is certainly relevant in determining liability and in fact precludes liability.

### D.  Fraudulent Misrepresentation Claim

Defendant argues that summary judgment should be granted in its favor with respect to the fraudulent misrepresentation claim because Plaintiff cannot prove scienter. As far as this Court can tell, Plaintiff does not respond to this argument.

The elements for fraudulent misrepresentation claims are virtually identical. A plaintiff must prove: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Walid v. Yolanda for Irene Couture, Inc*., 425 N.J. Super. 171, 180, 40 A.3d 85, 90 (App. Div. 2012). "Scienter" is a necessary element of a claim for fraudulent misrepresentation under New Jersey law. *See Jewish Center of Sussex County v. Whale*, 86 N.J. 619, 624–25, 432 A.2d 521 (1981). It requires "knowledge of falsity and an intention to obtain an undue advantage therefrom." *Id.*

We agree with Defendant that there is no evidence of scienter in the record as it conceded that its failure to inform Plaintiff of the lien was due to mere inadvertence. Moreover, Plaintiff does not contest this issue. Therefore, we will grant summary judgment in favor of Defendant on the fraudulent misrepresentation claim.

## IV.   CONCLUSION

For the reasons expressed above, Plaintiff's motion for summary judgment on his breach of contract claim is granted with respect to liability. Plaintiff's motion for summary judgment on

his negligent misrepresentation claim is denied because there is no genuine dispute of material fact that Defendant's misrepresentation was not the proximate cause of his injury.  Therefore, Plaintiff's motion for summary judgment is granted in part and denied in part.

Defendant's motion for summary judgment on the breach of contract claim is denied because there is no genuine dispute of material fact with respect to liability. Defendant's motion for summary judgment on the negligent misrepresentation claim is granted because there is no genuine dispute of material fact that its misrepresentation was not the proximate cause of Plaintiff's injury. Defendant's motion for summary judgment on the fraudulent misrepresentation claim is granted because there is no evidence in the record to show scienter and Plaintiff does not contest this issue. Therefore, Defendant's motion for summary judgment is granted in part and denied in part.

At this time, the Court will not consider the issue of damages. The record is unclear as to the quantum of damages, if any, Plaintiff is entitled to recover. That will be the subject of a trial at a later date. An appropriate order follows.


Dated: _3/29/2021_____                              s/ Robert B. Kugler_____
                                                        ROBERT B. KUGLER
                                                        United States District Judge